UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x

MALIEK BROWN,

                              Plaintiffs,

-against-

CITY OF NEW YORK, P.O. LAUREN MORALES, Cpt. WILLIAM TOBIN, P.O. ALLEN ALEXANDER, JOHN and JANE DOE 1 through 10, individually (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                              Defendants.
----------------------------------------------------------------- x

**AMENDED COMPLAINT**

19-CV-1575 (NGG)(RML)

Jury Trial Demanded

Plaintiff MALIEK BROWN, by his attorney, Robert Marinelli, Esq., complaining of the defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages arising from the arrest of plaintiff Maliek Brown on May 6, 2018, without probable cause and in violation of his rights under federal law.

**JURISDICTION AND VENUE**

2. The action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

**PARTIES**

5. The Plaintiff MALIEK BROWN ("plaintiff") is and was at all times relevant herein a resident of Kings County, New York.

6. Defendant CITY OF NEW YORK ("City") is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

7. Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, defendant CITY OF NEW YORK.

8. That at all times hereinafter mentioned, the individually named defendants, JOHN AND JANE DOE 1 through 10, were duly sworn officers of the NYPD and were acting under the supervision of the NYPD and according to their official duties.

9. P.O. Lauren Morales ("Morales"), Cpt. William Tobin ("Tobin"), and P.O. Allen Alexander ("Alexander") were duly sworn officers of the NYPD and were acting under the supervision of the NYPD and according to their official duties.

10. That at all times hereinafter mentioned, the individually named defendants, JOHN AND JANE DOE 1 through 10, were duly sworn officers of the NYPD and were acting under the supervision of the NYPD and according to their official duties.

11. That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the City of New York.

12. Each and all of the acts of the defendants alleged herein were committed by said defendants while acting within the scope of their employment by defendant CITY OF NEW YORK.

## STATEMENT OF FACTS

13. On or about May 6, 2018 at approximately 9:30 a.m., in the vicinity of 755 Broadway in Brooklyn, N.Y., plaintiff was arrested for shoplifting in a Walgreens.

14. Plaintiff informed the officers, including Morales, that he is a Type 1 diabetic and needed insulin. The officers ignored his request.

15. Plaintiff was taken to the 83rd Precinct. Plaintiff again complained that he was a diabetic

and required immediate treatment. Plaintiff was told that he could not be taken to the hospital until he got to central booking.

16. At approximately 7:00 p.m., as he was being taken to central booking, he again requested to a plaintiff be taken to the hospital. His request was ignored.

17. At central booking, plaintiff told the EMT that he needed insulin. The EMT told him that only officers from a local precinct could take him to the hospital

18. Plaintiff was then taken to a cell. Again plaintiff asked to go to the hospital for treatment. The defendant officers told plaintiff that they would return. They did not.

19. Plaintiff fell asleep in the cell. When he awoke between midnight and 1:00 a.m., he was told that central booking was closing and he could not be taken to the hospital until the morning. Plaintiff told the defendant officer that he felt very ill, suffered from diabetes and needed immediate treatment. His pleas were ignored.

20. Plaintiff fell asleep until approximately 7:30 a.m.

21. When he awoke plaintiff was acutely felt ill. Plaintiff told the officers that he needed insulin immediately and begged for water. Both requests were ignored.

22. Plaintiff was told that a precinct would be called to take him to a hospital.

23. Plaintiff, dehydrated and without proper medication, vomited twice.

24. Plaintiff told a defendant officer that he had thrown up and needed immediate assistance.

25. Plaintiff was told that officers from a precinct would be called to take him to the hospital. Approximately an hour later, plaintiff fell to the floor, unable to get up.

26. He begged to be taken to the hospital.

27. Finally, an ambulance was called.

28. When plaintiff arrived at Brooklyn Hospital it was learned that that due to defendants' failure to provide, or secure, plaintiff with, proper care, plaintiff had suffered Diabetes Ketone Acedosis ("DKA").

29. Diabetic ketoacidosis is a serious complication of diabetes that occurs when your body

produces high levels of blood acids called ketones. It is caused when Type 1 diabetics are not provided with insulin.

30. Plaintiff had developed a serious infection in his feet requiring him to remain at Brooklyn Hospital for four days. While at the hospital plaintiff was shackled to the bed by his wrists and ankles.

31. Despite plaintiff's numerous pleas, officers guarding plaintiff refused to remove his ankle shackles. While at the precinct plaintiff was detained by officers from the 88th precinct.

32. Plaintiff in pain, requested to be taken to central booking so that his time in custody would be shortened. Defendant officers ignored his request.

33. While at the hospital plaintiff was guarded by officers from the 88th precinct. Eventually plaintiff was released from the hospital and taken to the 83rd precinct.

34. Once at the precinct, plaintiff explained that he had just been discharged from the hospital, suffered from diabetes, was in pain and needed the process expedited or he could again become gravely ill.

35. Plaintiff was told he would have to wait for the next bus.

36. Plaintiff explained that he could not wait and further delay was dangerous to his health.

37. Plaintiff's pain increased and he begged to be returned to the hospital immediately. Plaintiff's pleas were ignored.

38. Plaintiff was transported to central booking and placed in a cell.

39. Plaintiff became violently ill and was taken to Woodhull Hospital.

40. Plaintiff was again in DKA.

41. Plaintiff remained in Woodhull hospital for approximately one day. Plaintiff was shackled to a bed by his wrists and ankles. Plaintiff's pleas to have the shackles removed from his ankles were ignored.

42. On May 12, plaintiff was released from the hospital and returned to central booking.

43. Plaintiff saw a judge, pled guilty to disorderly conduct and received a conditional discharge.

44. Since this incident, plaintiff's complications from plaintiff's Type 1 Diabetes have accelerated.

45. By failing to immediately transport plaintiff to the hospital for treatment, officers acted with deliberate indifference to his serious medical needs.

46. Officers deliberately ignored the excessive risk to plaintiff's health by keeping him confined under circumstances that contributed to his pain and stress and caused his condition to deteriorate.

47. On May 6, 2018, at approximately 8:43 p.m., all necessary paperwork required to arraign plaintiff had been produced.

48. Defendants failed to forward or to have an individual under their command forward the paperwork necessary to schedule an arraignment of plaintiff at the Hospital.

49. Tobin and Alexander are supervisors who are responsible for arranging arraignments of arrestees.

50. For his entire stay, plaintiff was handcuffed to the hospital bed with his feet shackled together.

51. Plaintiff remained handcuffed during his entire stay, forcing him to remain in certain positions and making it difficult for him to sleep, rest, and alleviate his pain.

52. As a result of the officers' deliberate indifference to his serious medical needs, plaintiff received inadequate medical care.

53. Officers were aware of the risk to plaintiffs' health by ignoring his requests to seek treatment at a hospital, keeping him handcuffed and shackled during his hospital stay, and creating inhumane conditions while hospital staff attempted to treat plaintiff for his sickle cell crisis.

54. Despite a legal obligation to have plaintiff arraigned within two days, Delayed Arraignment Defendants waited until May 12, 2018 to arrange an arraignment at Coney Island Hospital for plaintiff. Those Delayed Arraignment Defendants that did not directly participate, were aware plaintiff was not arraigned, had an opportunity prevent this delay, had a duty to intervene and prevent

such conduct and failed to intervene.

55. As a result of Delayed Arraignment Defendants failure to forward or to have an individual under their command forward the paperwork required to schedule an arraignment, arrange an arraignment, or to take intervening action to insure plaintiff's timely arraignment, between May 6 and May 12, 2018, plaintiff remained in custody for six days before he was arraigned.

56. All of the above occurred as a direct result of the unconstitutional policies, customs, and practices of the CITY OF NEW YORK, including, without limitation, the inadequate screening, hiring, retaining, training, and supervising of its employees.

57. The aforesaid is not an isolated incident, defendant City is aware (from lawsuits, notices of claims, and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the defendants, are insufficiently trained, supervised, and disciplined regarding: reporting misconduct of other officers; the use of excessive force; and training employees in the care and custody of people with diabetes.

58. Moreover, upon information and belief, defendant City was aware, prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, defendant City has retained these officers, and failed to adequately train and supervise them, particularly with regard to the care and custody of inmates with sickle cell anemia.

59. Defendant City is further aware that such improper supervision and training has often resulted in a deprivation of civil rights. Despite such notice, defendant City has failed to take corrective action. This failure caused the officers in the present case to violate plaintiff's civil rights.

60. All of the aforementioned acts of defendants, their agents, servants, and employees were carried out under the color of state law.

61. All of the aforementioned acts deprived plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

62. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

63. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

64. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

65. As a result of the foregoing, plaintiff sustained, *inter alia*, physical and psychological injuries, pain, and mental anguish, emotional distress, embarrassment, humiliation, and deprivation of his liberty and constitutional rights.

66. As a result of the foregoing, plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

67. Plaintiff repeats, reiterates, and realleges each and every allegation with the same force and effect as if fully set forth herein.

68. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

69. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A SECOND CAUSE OF ACTION
(Medical Indifference under Federal Law)

70. Plaintiff repeats, reiterates, and realleges each and every allegation with the same force and effect as if fully set forth herein.

71. Defendants intentionally delayed in responding to plaintiff's requests for medical treatment and kept him confined in a manner that interfered with plaintiff's medical care and exacerbated plaintiff's serious medical condition.

72. Defendants acted with deliberate indifference to plaintiff's serious medical needs, causing the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

73. As a result of the foregoing, plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(Failure to Intervene under Federal Law)

74. Plaintiff repeats, reiterates, and realleges each and every allegation with the same force and effect as if fully set forth herein.

75. Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

76. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth and Fourteenth Amendments.

77. As a result of the foregoing, plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Delay in Arraignment Under 42 U.S.C. 1983)

78. Plaintiff repeats, reiterates, and realleges each and every allegation with the same force and effect as if fully set forth herein.

79. Defendants, Alexander, Tobin and Does, had a duty to forward the documents necessary, and to schedule an arraignment of plaintiff without unnecessary delay.

80. By failing to do so, defendants deprived plaintiff of his right to a prompt arraignment.

81. As a result of the foregoing, plaintiff was unnecessarily imprisoned, handcuffed to a hospital bed and shackled for the remainder of his hospitalization at Coney Island Hospital, and was subjected to extreme physical discomfort and mental distress.

82. Plaintiff was aware of his extended imprisonment and did not consent to his imprisonment.

83. Plaintiff's extended imprisonment while a patient at Coney Island Hospital was a result of the failure of defendants to schedule plaintiff's arraignment.

84. The extended imprisonment of plaintiff without prompt arraignment deprived the plaintiff of his right to be secure in his person against unreasonable searches and seizures guaranteed by the Fourth Amendment of the Constitution of the United States.

85. The extended imprisonment of plaintiff without prompt arraignment deprived the plaintiff of his right not to be deprived of his liberty without due process of law guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States.

86. Defendants were acting under color of state law when they failed to schedule an arraignment, thereby depriving plaintiff of his right to a prompt arraignment.

87. Defendants deprived plaintiff of his rights to be secure in his person against unreasonable searches and seizures guaranteed by the Fourth Amendment and his right not to be deprived of his liberty without due process of law guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States under color of state law, in violation of 42 U.S.C. §1983, by failing to forward the

paperwork necessary to schedule an arraignment to the clerk of the Criminal Court of the City of New York, County of Kings on May 6, 2018, and each succeeding day until May 12, 2018

**AS AND FOR A FIIFTH CAUSE OF ACTION**
(Municipal Liability under Federal Law as to defendant City)

88. Plaintiff repeats, reiterates, and realleges each and every allegation with the same force and effect as if fully set forth herein.

89. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

90. The aforementioned customs, policies, usages, practices, procedures, and rules of the NYPD included, but were not limited to, police officers: failing to report misconduct of other officers; using excessive force against individuals; unlawfully searching individuals; and unlawfully seizing an individual's personal property.

91. In addition, the City engaged in a policy, custom, or practice of inadequate screening, hiring, retaining, training, and supervising its employees that was the moving force behind the violation of plaintiff's rights as described herein. As a result of the failure of the City to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant City has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

92. The foregoing customs, policies, usages, practices, procedures, and rules of the City and the NYPD constituted deliberate indifference to the safety, well-being, and constitutional rights of plaintiffs.

93. The foregoing customs, policies, usages, practices, procedures, and rules of the City and the NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiffs as alleged herein.

94. The foregoing customs, policies, usages, practices, procedures, and rules of the City

and the NYPD were the moving force behind the constitutional violations suffered by plaintiffs as alleged herein.

95. As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the City and NYPD, plaintiff was subjected to excessive force and he was unlawfully arrested.

96. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff's constitutional rights.

97. All of the foregoing acts by defendants deprived plaintiff of federally protected rights, including, but not limited to, the right:

a. To be free from excessive force; and

b. To be free from the unnecessary and wanton infliction of pain caused by intentionally denying or delaying access to medical care and intentionally interfering with the treatment prescribed.

98. As a result of the foregoing, plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff demands judgment and prays for the following relief, jointly and severally, against the defendants:

A. full and fair compensatory damages in an amount to be determined by a jury;

B. punitive damages against the individual defendants in an amount to be determined by a jury;

  C. reasonable attorneys' fees and the costs and disbursements of this action; and

  D. such other and further relief as appears just and proper.


DATED: December 3, 2019
     New York, New York

            /s
           Robert Marinelli
           305 Broadway, Suite 1001
           New York, New York 10007
           (212) 822-1427

          *Attorney for Plaintiff*